UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CLARK,<br><br>    Plaintiff,<br><br>v.<br><br>KATHLEEN ALLISON, *et al.*,<br><br>    Defendants. | Case No. 2:22-cv-00190-KJM-JDP (PS)<br><br>**FINDINGS AND RECOMMENDATIONS**<br><br>THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED<br><br>ECF No. 13<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

    Plaintiff, a former state inmate, brings this 42 U.S.C. § 1983 action against defendants Noland, N. Scaife, C. Lesniak, Ken Clark, and Kathleen Allison for incidents that occurred while he was incarcerated at California State Prison, Corcoran ("CSP-Corcoran"). Plaintiff asserts Eighth Amendment, Fourteenth Amendment, and a state law negligence claims based on his transfer from one facility to another within CSP-Corcoran in May 2020 and a subsequent assault by another inmate on August 13, 2020.[1] Defendants move to dismiss plaintiff's Fourteenth

---

[1] Plaintiff's complaint lists four discrete causes of action: (1) Eighth and Fourteenth Amendment claims against defendants Allison, Clark, Scaife, and Lesniak for actions occurring on May 14, 2020; (2) negligence claims against Allison, Clark, Scaife, and Lesniak for actions occurring on May 14, 2020; (3) Eighth and Fourteenth Amendment claims against defendants Allison, Clark, Scaife, Lesniak, and Noland for actions occurring on August 13, 2020; and (4) negligence claims against defendants Allison, Clark, Scaife, Lesniak, and Noland for actions

Amendment due process claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and his state law negligence claims for failure to comply with California's Government Claims Act.[2]  I recommend that defendants' motion be granted.

## The Allegations

Plaintiff, due to his past cooperation with prison officials and law enforcement, was housed at CSP-Corcoran as a protective custody inmate with serious safety needs and multiple known and unknown inmate enemies.  ECF No. 1 at 4.  On May 14, 2020, defendants Allison, Clark, Scaife, and Lesniak transferred plaintiff from Facility B to Facility A without notice, a classification hearing, or opportunity to be heard.  *Id.*  Notwithstanding plaintiff's pleas to defendants for safe housing and protection from other inmates, he remained housed in Facility A. On August 13, 2020, plaintiff was severely assaulted by a non-protective custody inmate named Simmons at the restricted Facility 3A exercise yard.  *Id.* at 5-7.  Plaintiff alleges that defendants knew Simmons had previously assaulted other inmates but still permitted him to access the yard. *Id.* at 6.  He further alleges that Allison, Clark, Scaife, Lesniak, and Nolan paid Simmons with a television for assaulting plaintiff.  *Id.*

## Legal Standard

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when a plaintiff "pleads factual content that

---

occurring on August 13, 2020.  Plaintiff's claims pertaining to May 14, 2020, are not alleged against defendant Noland.

[2] Defendants do not move for dismissal of plaintiff's Eighth Amendment claims.

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In assessing the sufficiency of the pleadings, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899-900 (9th Cir. 2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* at 679. Those facts must be sufficient to push the claims "across the line from conceivable to plausible." *Id.* at 683. Ultimately, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

Where a plaintiff appears without counsel in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a pro se civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

When a complaint or claim is dismissed, "[l]eave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009). Leave to amend is

3

not required where permitting further amendment to the pleadings would be futile.  *See Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1049-50 (9th Cir. 2006).

**Discussion**

**A. Fourteenth Amendment Due Process**

Plaintiff alleges that his due process rights were violated when he was removed from protective custody and placed in an environment in which he was exposed to non-protective custody inmates. To succeed on his procedural due process claims, plaintiff "must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008). The threshold consideration of the Fourteenth Amendment's due process clause is whether the plaintiff has been deprived of a protected interest in property or liberty. *American Manufacturers Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). "Only after finding the deprivation of a protected interest" does the court "look to see if the State's procedures comport with due process." *Id.* at 59.

*Sandin v. Conner* "refocused the test for determining the existence of a liberty interest away from the wording of prison regulations and toward an examination of the hardships caused by the prison's challenged action relative to 'the basic conditions' of life as a prisoner." *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (citing *Sandin*, 515 U.S. 472, 485-86 (1995)). The analysis of whether such a liberty interest might exist, or if a prison hardship is "atypical and significant," is a fact-based consideration. Some factors that should be considered include: "(1) whether the conditions of confinement 'mirrored those conditions imposed upon inmates in analogous *discretionary* confinement settings, namely administrative segregation and protective custody,' (2) the duration and intensity of the conditions of confinement; and (3) whether the change in confinement would 'inevitably affect the duration of [the prisoner's] sentence.'" *Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013). If the hardship is "sufficiently significant," then a court determines whether the procedures used to deprive that liberty interest satisfied due process. *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003).

1    Plaintiff's allegation that he was moved out of protective custody does not implicate one
2 of his "protected liberty interests in some 'unexpected matter'" or establish that plaintiff
3 potentially suffered an "atypical and significant hardship." It is well settled that prisoners have
4 no constitutional right to placement in any particular prison, to any particular security
5 classification, or to any particular housing assignment. *See Meachum v. Fano*, 427 U.S. 215,
6 224-25 (1976) (conviction sufficiently extinguishes prisoner's liberty interest and empowers the
7 state to confine him in any of its prisons; no liberty interest protected by the Due Process Clause
8 is implicated in a prison's reclassification and transfer decisions); *Montayne v. Haymes*, 427 U.S.
9 236, 242 (1976) (no constitutional liberty interest in the involuntary transfer of a prisoner to a
10 different facility).

11    Thus, defendants' motion should be granted on plaintiff's Fourteenth Amendment due
12 process claim premised on his removal from protective custody. *See Polk v. Pittman*, No. 1:11-
13 CV-00728-AWI, 2012 WL 2308143, at *8 (E.D. Cal. June 18, 2012) ("Since there is no
14 constitutional right to a particular classification while incarcerated, no liberty interests exist[] in
15 Plaintiff's placement into protective custody."); *Lopez v. Frawner*, No. CV 13-743 JH/CG, 2015
16 WL 12819183, at *8 (D.N.M. Feb. 23, 2015) ("Plaintiff contends only that he was removed from
17 protective custody when he was transferred to OCPF, and complains generally about the threat he
18 felt as a registered sex offender placed in general population. The Due Process Clause does not
19 protect a prisoner against transfer from one institution to another within the state prison system.").

20 **B. Negligence**

21    Plaintiff also alleges that defendants were negligent when removing him from protective
22 custody and when permitting Simmons to enter the restricted Facility 3A exercise yard.
23 Defendants counter that plaintiff failed to comply with California's Government Claims Act
24 because he filed this action outside the six-month window for initiating a lawsuit. ECF No. 13.

25    Under California's Government Claims Act, a plaintiff may not bring a suit for monetary
26 damages against a public employee or entity unless the plaintiff has first presented the claim to
27 the California Victim Compensation and Government Claims Board ("VCGCB"), and the
28 VCGCB has acted on the claim, or the time for doing so has expired. Cal. Gov't Code §§ 905.2,

910, 911.2, 945.4, 950-950.2. To be timely, a claim must be presented to the VCGCB "not later than six months after the accrual of the cause of action." *Id.* § 911.2. Thereafter, "any suit brought against a public entity" must be commenced no more than six months after the public entity rejects the claim. *Id.* § 945.6, subd. (a)(1). Federal courts must require compliance with the California Government Claims Act for pendant state law claims that seek damages against state employees or entities. *Willis v. Reddin*, 418 F.2d 702, 704-05 (9th Cir. 1969); *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995) ("The California Tort Claims Act requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part."); *Ruiz v. Flores*, No. 1:14-CV-00179-AWI, 2015 WL 3730793, at *1 (E.D. Cal. June 12, 2015) (confirming that "[s]trict compliance with the six-month period is required" for California Government Claims Acts). State tort claims included in a federal action, filed pursuant to 42 U.S.C. § 1983, may proceed only if the claims were presented in compliance with the applicable exhaustion requirements. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988); *Butler v. Los Angeles Cnty.*, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008).

Plaintiff timely presented his claim to the VCGCB. *See* ECF No. 1 at 2. The claim was rejected on July 22, 2021, leaving plaintiff until January 24, 2022—six months later—to initiate this lawsuit.[3] Plaintiff did not file his complaint, however, until January 28, 2022.[4] The analysis could end here. Here, however, plaintiff has presented the court with evidence in his opposition that is not contained in his complaint and to which defendants have responded to in their reply.

---

[3] January 22, 2022, fell on a Saturday, pushing the deadline back to January 24, 2022.

[4] Plaintiff argues that his complaint is timely because California Code of Civil Procedure section 1013 provides that five additional days are added when service is made by mail. ECF No. 14 at 2. However, section 1013 does not apply to a notice mailed under Government Code section 945.6. *See Cole v. Los Angeles Unified Sch. Dist.*, 177 Cal. App. 3d 1, 4-5 (Cal. Ct. App. 1986) ("It is well established by case law that the six-month limitation period in Government Code section 945.6 starts to run when the notice of rejection has been either personally served *or* deposited in the mail and the time is *not* extended five additional days by Code of Civil Procedure Section 1013."); *Aaron v. Aguirre*, No. 06-cv-1451-H(POR), 2007 WL 9777874, at *4 (S.D. Cal. Feb. 2, 2007) ("Contrary to Plaintiffs' assertion, however, the California Court of Appeal has specifically ruled that this five day extension for service by mail does not apply to a notice of rejection.") (citing *Cole*, 177 Cal. App. 3d at 4-5).

And while courts generally do not look beyond the four corners of a complaint to decide a motion to dismiss, the court will, in light of plaintiff's pro se status and considering that defendants have had an opportunity to respond, explain why plaintiff has still failed to meet the required six-month deadline.

Plaintiff contends that, although the rejection notice is dated July 22, 2021, it was not mailed until July 26, 2021—as evidenced by the postmark on the envelope—and that therefore July 26, 2021, is the start of the six-month clock. *See* ECF No. 14 at 10. Plaintiff does not have the envelope, and instead provides a signed declaration attesting that the rejection was postmarked July 26, 2021. *Id.*

Under the Government Claims Act, a lawsuit must be initiated "not later than six months after the date such notice is personally delivered or *deposited in the mail*." Cal. Gov't Code § 945.6(a)(1) (emphasis added). The rejection notice (provided by plaintiff in his opposition) was deposited in the mail on July 22, 2021. ECF No. 14 at 8 ("[C]orrespondence placed in the internal mail collection system at the Government Claims Program *is deposited with the United States Postal Service* with postage thereon fully prepaid that same day in the ordinary course of business.") (emphasis added). Indeed, there is a "presumption that the letter issuance date is also the date on which the letter was mailed." *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1123 (9th Cir. 2007). Even if the court were to assume that the rejection notice was not "deposited in the mail" until July 26, 2021, plaintiff would still have missed the deadline because he did not commence this action until January 28, 2022.

Plaintiff also takes the position that service was not proper because the postmark date was more than one day after the letter was deposited into the mail. ECF No. 14 at 2 (citing Cal. Civ. Proc. Code § 1013a (3)). Again, this argument fails because the complaint contains no allegations that service was improper, and plaintiff has not sought to incorporate by reference any documents. Even still, this argument lacks merit.

The Government Claim's Act does not require that claimant receive the notice, only that notice be served in accordance with the requirements of California Code of Civil Procedure section 1013a. *See Him v. City & Cty. of S.F.*, 133 Cal. App. 4th 437, 445 (2005) ("[A] claimant

7

1  is required to comply with the six-month statute of limitations associated with government tort
2  claims upon proof that the notice of rejection was served even if it was not actually received by
3  the claimant."). Section 1013a provides four methods in which service by mail is acceptable and
4  the proof of service provided by plaintiff, ECF No. 14 at 8, meets the requirements of section
5  1013a(1). *See* Cal. Civ. Proc. Code § 1013a(1) (proof of service by mail may be made by
6  affidavit stating: exact title of document served; name and address of person making the service
7  showing person resides or is employed in county where mailing occurs, is over 18 and not a
8  party; and showing date and place of deposit in mail, name and address of person being served;
9  and showing envelope was sealed and deposited in the mail with prepaid postage).

10  Because plaintiff filed this lawsuit beyond the six-month deadline prescribed by
11  Government Code section 945.6, his state law negligence claims must also be dismissed. *See*
12  *Gonzalez v. Cnty. of Los Angeles*, No. CV 16-7920 VBF (FFM), 2017 WL 5159533, *10 (C.D.
13  Cal. Oct. 25, 2017) (finding that state claims were barred because the plaintiff filed his
14  government claim one day after expiration of the six-month period).

15  **Conclusion**
16  Accordingly, it is hereby RECOMMENDED that:
17      1. Defendants' motion to dismiss, ECF No. 13, be granted.
18      2. Plaintiff's Fourteenth Amendment due process and state law negligence claims be
19  dismissed without leave to amend.
20      3. This action proceed on plaintiff's Eighth Amendment failure to protect claim.
21  These findings and recommendations are submitted to the United States District Judge
22  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days
23  after being served with these findings and recommendations, any party may file written
24  objections with the court and serve a copy on all parties. Such a document should be captioned
25  "Objections to Magistrate Judge's Findings and Recommendations." Any response to the
26  objections shall be served and filed within fourteen days after service of the objections. The
27  parties are advised that failure to file objections within the specified time may waive the right to
28

appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   February 14, 2024

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE